IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.  RDB 24-255 |
| | * | |
| VINCE AKINS, | * | |
| | * | |
| Defendant | * | |
| | * | |

**UNITED STATES' NOTICE AND MOTION TO
ADMIT EVIDENCE**

The United States of America, by and through its undersigned attorneys, hereby provides notice of intent, and moves pursuant to Federal Rule of Evidence 404(b) ("FRE 404(b)"), to the extent necessary, to admit the following evidence in the trial of the above-captioned matter:

1. The defendant's failure to account for and pay the employer's share of Federal Insurance Contribution Act ("FICA") taxes for Avia Solutions for the same quarters charged in Counts Seven through Nineteen, and his failure to pay unemployment taxes for the tax years 2019 through 2022;

2. The defendant's unsuccessful attempt to obtain a "second draw" of Paycheck Protection Program ("PPP") loans for the four entities identified in Counts One through Four;

3. The defendant's civil penalties for failure to pay federal income and trust fund taxes, and the underlying conduct;

4. The defendant's use of business funds to pay for personal expenditures instead of paying employment taxes owed by Avia Solutions;

5. The defendant's prior criminal convictions for bank fraud and use of a fraudulent Social Security number; and

6. The defendant's failure to pay trust fund taxes for the business Luomo Creatives.

The above evidence is either intrinsic to the charged conduct, admissible under FRE 404(b), or admissible as cross-examination and rebuttal.  The government hereby provides notice to the defendant, and for the reasons discussed below, requests that the Court permit the

government to introduce certain evidence at trial in its case-in-chief, and other evidence through cross examination and rebuttal, depending on what evidence is introduced.

## INDICTED CHARGES

On August 28, 2024, a grand jury returned an Indictment charging the defendant, Vince Akins, with four counts of bank fraud, in violation of 18 U.S.C. 1344, two counts of conducting transaction in violation of criminally derived proceeds, in violation of 18 U.S.C. § 1957, twelve counts of willfully failing to account for and pay over trust fund taxes in violation of 26 U.S.C. § 7202, and one count of willfully failing to file tax return. (ECF No. 1.)

As alleged in the Indictment, the defendant was the Director and sole owner of five companies: Avia Solutions LLC ("Avia Solutions"), Queens Limo Corp ("Queens Limo"), AVS Mobility ("AVS Mobility"), VGA Systems Corp ("VGA Systems"), and Royal Systems Transportation Inc ("RST"). Only one company, Avia Solutions, was in operation in the years 2019 and 2020. *Id*. at ¶¶ 2-7.

The Indictment also alleges that in June 2020, the defendant submitted four PPP loans to Sandy Spring Bank on behalf of Queens Limo, AVS Mobility, VGA Systems, and RST, totaling $387,220. *Id*. at ¶¶ 29-32. As part of the PPP loan application, the defendant attached Internal Revenue Service ("IRS") Forms 940, Employer's Annual Federal Unemployment Tax Return, and IRS Forms 941, Employer's Quarterly Federal Tax Return for the respective entities purporting to show the entities were in operation and had employee wage expenses. Furthermore, the defendant represented that the entities were in the business of federal government contracting. These attached IRS Forms and his statements were false, however, as these businesses had no contracts with the federal government at the time, were not in operation in 2019 or 2020, and had no employee expenses.

After submitting three of the PPP loan applications and receiving the funds from the Small Business Administration into a Sandy Spring Bank account in the name of Avia Solutions, the defendant caused two wire transfers totaling $151,060 from the Avia Solutions bank account to bank accounts in Nigeria. *Id*. at ¶ 36. Despite receiving over $150,000 from the bank fraud, which he used for personal purposes, the defendant did not file a 2020 individual income tax return.

The Indictment further alleges that the defendant exercised control over the finances of Avia Solutions by having signature authority over the business bank accounts; hiring, firing, and supervising employees; depositing and withdrawing funds from the business bank accounts; signing IRS Forms on behalf of Avia Solutions; and acting as point of contact with government agencies. *Id*. at ¶ 16. The defendant was, therefore, responsible for collecting, accounting for, and paying over to the IRS the trust fund taxes of the employees of Avia Solutions. *Id*. at ¶ 38. From the fourth quarter of 2019 through the fourth quarter of 2022, however, the defendant failed to account for and pay over those taxes. *Id*. at ¶ 39. Instead of paying those taxes, the defendant used some of the business receipts to pay for personal expenditures, including vehicles, rent on his personal residence, private school tuition for his child, and to send overseas to Nigeria. *Id*. at ¶ 18.

## UNCHARGED CONDUCT

The Indictment, however, does not capture the full scope of Akins' misconduct. The following instances of uncharged conduct are either intrinsic to the charged conduct, probative of the defendant's intent and willfulness with respect to the fraud and tax charges contained in the Indictment, or admissible as cross-examination and/or rebuttal evidence should the defendant posit a defense of mistake, accident, and/or good faith.

A.  Failure to Account For and Pay Employer's Share of FICA Taxes and Unemployment Taxes

During the same time period the defendant was not reporting and not paying the trust fund taxes for Avia Solutions, he was not paying the employer's share of FICA taxes and unemployment taxes. The total of the employer's share of unpaid FICA taxes for the fourth quarter of 2019 through the fourth quarter of 2022 is approximately $29,058. The total unemployment taxes owed for the calendar years 2019 through 2022 is approximately $6,733.

B.  Unsuccessful Attempt to Obtain Additional PPP Loans

After successfully receiving PPP loans using fraudulent applications for four of his non-operating companies (AVS Mobility, Queens Limo, VGA Systems, and Royal Systems), the defendant attempted to obtain a "second draw" of PPP loans based on the same fraudulent paperwork. This attempt was unsuccessful for all four entities.

C.  Prior Civil Tax Assessments and Trust Fund Recovery Penalty

The defendant has a long history of non-compliance with civil tax enforcement that resulted in two tax assessments.

First, the defendant failed to pay income taxes from prior years. On January 8, 2016, the United States filed a civil complaint against the defendant to reduce to judgment federal income taxes assessed against him for the tax years 2008, 2009, and 2010. *See* Complaint for Federal Taxes, *United States v. Vince Akins et al.*, No. 16-00084 (D. Md.). The total amount of the assessments for all three years was $630,880.22. *Id*. at 2-3. On March 6, 2019, the U.S. District Court for the District of Maryland granted the United States' Motion for Summary Judgment and entered a judgment against the defendant in the amount of $674,773. Judgment, *United States v. Vince Akins et al.*, No. 16-00084 (D. Md. Mar. 6, 2019).  This assessment has remained unpaid

4

over the years and has accumulated with the defendant's other tax liabilities. IRS records as of August 13, 2025, show that the defendant owes $1.8 million in taxes to the IRS.

Second, the defendant was assessed a Trust Fund Recovery Penalty ("TFRP") for one of his companies, AVS Mobility[1], for the tax period ending September 30, 2017, in the amount of $8,843 and for the tax period ending December 31, 2017, in the amount of $10,696. A TFRP is imposed by the IRS against a "responsible person" who is determined as someone who has the duty to perform and power to direct the collecting, accounting, and paying of an employer's trust fund taxes.[2] The TFRP is levied against the individual responsible for collecting and remitting employment taxes—not the business itself.

In other words, the IRS determined that the defendant was the responsible person for failing to pay his company's delinquent employment taxes in 2017, for which he was penalized $19,539.

D. <u>Use of Business Accounts to Pay for Personal Expenditures</u>

Akins used the business accounts of businesses he owned, particularly that of Avia Solutions, to pay personal expenses, such as tuition, vehicles, rent, and to send money to Nigeria during the same time period in which he was responsible for paying trust fund taxes for Avia Solutions.

E. <u>Prior Criminal Convictions for Bank Fraud and Fraudulent Use of Social Security Number</u>

The defendant has a prior conviction for Social Security and bank fraud. According to evidence presented at a 2006 trial in the U.S. District Court for the District of Maryland, the

---

[1] The Indictment charges the defendant with a bank fraud count involving a PPP loan for this company.
[2] Employment Taxes and the Trust Fund Recovery Penalty, https://www.irs.gov/businesses/small-businesses-self-employed/employment-taxes-and-the-trust-fund-recovery-penalty-tfrp (last accessed August 18, 2025).

defendant applied for and received a valid social security number, using his true date and place of birth. *See* Man Using Several Aliases Convicted in Social Security and Bank Fraud Scheme, https://www.justice.gov/archive/usao/md/news/2007/ManUsingSeveralAliases ConvictedinSocialSecurityandBankFraudScheme.html (last accessed August 18, 2025); *see also* Government's Response to Petition for Relief Under 28 U.S.C. § 2255, *United States v. Vince Akins*, No. 06-cr-00152 (D. Md.)  ECF 75. The defendant then applied for and received two additional social security numbers in using variations of his name, a fraudulent date of birth, fraudulent places of birth, and other false personal information. *Id.* at 2-3. He used these fraudulent social security numbers to obtain multiple state identification cards and acquire various forms of loans from several financial institutions. *Id.* at 3-4. In addition, he prepared false income tax returns and forms using false income information to qualify for extensions of credit and caused more $200,000 in loss for his fraudulent scheme. *Id.* at 5. For his 2006 conviction, the defendant was sentenced to sixty months in prison.

    F.  <u>Failure to Pay Employment Taxes for Luomo Creations</u>

Luomo Creations ("Luomo") was a business created in 2016 by a naturalized citizen and veteran of the U.S. Army ("Individual B") to work as an Uber driver. The defendant met Individual B through his son's periodic hiring of Individual 2 as an Uber driver. The defendant convinced Individual B to work with him to obtain federal contracts using the service-disabled veteran status. The defendant instructed Individual B how to set up an account using System Award Management system for federal contracts. The defendant wrote proposals and was listed as the project manager with Individual B as the owner. The defendant obtained contracts for Luomo with the Department of Veterans Affairs ("VA") to provide transportation to disabled veterans. Individual B gave the defendant access to Luomo's credit cards and bank accounts,

6

which the defendant used for non-Luomo-related expenses, to include car payments and school tuition for the defendant.

The defendant was responsible for payroll at Luomo and prepared the Forms 941 and 940 for Individual B to sign and file. When Individual B first set up Luomo with a payroll service, the payroll service was supposed to withhold and pay the employment taxes on behalf of Luomo. Individual B later learned that the defendant had directed the payroll company not to remit the taxes to the IRS. The defendant set up another business account at Sandy Spring bank, where federal contract payments for Luomo were deposited. Individual B and the defendant had a falling out when Individual B tried to open bank accounts for Luomo independent of the defendant.

## RELEVANT LEGAL AUTHORITY

Evidence of other crimes, wrongs, or "bad acts" that is not intrinsic to the crime charged is admissible under Fed. R. Evid. 404(b) if offered for a purpose other than proving that the defendant acted in accordance with his or her character when committing the alleged offense. *United States v. Higgs*, 353 F.3d 281, 311 (4th Cir. 2003) ("Rule 404(b) is an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." (internal quotation marks omitted) (emphasis in original)). The list of permissible purposes for which the evidence may be offered is intended to be extremely broad and includes such things as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *see also United States v. Queen*, 132 F.3d 991, 994-95 (4th Cir. 1997) (recognizing that "the rule's list [of permissible purposes] is not exhaustive" since it is intended to be a rule of inclusion).

As the Fourth Circuit has explained, "not all prior 'bad act' evidence is encompassed by Rule 404(b)." *United States v. Brizuela*, 962 F.3d 784, 793 (4th Cir. 2020) (quoting *United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012)). Instead, Rule 404(b) applies only when the evidence is extrinsic, that is, separate from or unrelated to the charged offense. In contrast, acts that are a part of, or intrinsic to, the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence. *Brizuela*, 962 F.3d at 793.

The Fourth Circuit defines intrinsic evidence as uncharged conduct that "arose out of the same series of transactions as the charged offense, or . . . is necessary to complete the story of the crime on trial." *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (internal quotation marks and alterations omitted). Such evidence must have a "clear link or nexus" to the story of the offense and be offered for a purpose that is essential to that story. *Brizuela*, 962 F.3d at 795.

Additionally, evidence can be intrinsic where the other criminal acts to be introduced "are inextricably intertwined" with the alleged crime; that is "both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996) (internal quotation marks omitted). Evidence that "forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted" is considered "inextricably intertwined with the evidence regarding the charged offense." *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) (internal quotation marks omitted). This is so "[e]ven where evidence predates the time period of the indictment," because "the government is allowed to provide context relevant to the criminal charges." *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007).

In cases involving extrinsic evidence, the Fourth Circuit test for whether Rule 404(b) evidence is admissible, is as follows:

(1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes.

(2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense.

(3) The evidence must be reliable.

(4) And the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the fact-finding process.

*Queen*, 132 F.3d at 997. Evidence of an act "is 'necessary,' for purposes of establishing an exception under Rule 404(b), when that evidence 'is an essential part of the crimes on trial' or when that evidence 'furnishes part of the context of the crime.'" *United States v. McBride*, 676 F.3d 385 (4th Cir. 2012) (quoting *United States v. Rawle*, 845 F.2d 1244, 1247 n.4 (4th Cir. 1988)). To be "necessary" the evidence need not be "critical to the prosecution's case" but merely "probative of an essential claim or an element of the offense." *United States v. Rooks*, 596 F.3d 204, 211 (4th Cir. 2010). With respect to the third prong, "[e]vidence is reliable for purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror." *Siegel*, 536 F.3d at 319 (internal quotation omitted). Finally, evidence is unfairly prejudicial "only if there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Wells*, 163 F.3d 889, 896 (4th Cir. 1998); *see also United States v. Williams*, 49 F. App'x. 420, 426 (4th Cir. 2002) (unpublished) ("[E]xclusion of relevant evidence under Rule 403 is done sparingly as an extraordinary remedy."); *United States v. Grimmon*, 137

F.3d 823, 833 (4th Cir. 1998) ("[T]he touchstone for excluding evidence under Rule 403 is not prejudice, but 'unfair' prejudice. Moreover, unfair prejudice must 'substantially' outweigh the probative value of the evidence.").

**EVIDENCE INTRINSIC, DIRECT, OR ADMISSIBLE PURSUANT TO FRE 404(B)**

As described in more detail below, the following evidence the government seeks to introduce is intrinsic in that it arose out of the same series of transactions as the charged offense, or in the alternative, is admissible under Rule 404(b) to prove intent, knowledge, absence of mistake, or lack of accident.

> A. <u>The defendant's failure to account for and pay the employer's share of FICA taxes and unemployment taxes during the same period charged in the indictment</u>

The defendant's failure to account for and pay the employer's share of FICA taxes on behalf of Avia Solutions for the fourth quarter of 2019 through the fourth quarter of 2022 is part and parcel of the employment tax charges in the indictment. Similarly, Akins' failure to file annual Unemployment Tax Returns and pay the taxes owed is part of the same course of conduct charged in counts seven through nineteen of the Indictment. It is a logical and necessary part of the government's theory of prosecution that the defendant did not file IRS Forms 941, which would have reported not only the trust fund taxes collected from employees of Avia Solutions, but also the employer's share of the FICA taxes. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) ("This court has previously recognized the propriety of introducing 'background' evidence . . . . Such evidence, often referred to as 'res gestae,' does not implicate Rule 404(b)."). Further, such evidence is inextricably intertwined with the charged offenses in that it "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the same offense . . . or completes the story of the charged offense." *Id.*

The evidence also demonstrates his willfulness with respect to the charged conduct, which requires proof that he knew his duty and intentionally failed to carry it out. Unemployment Tax Returns, IRS Forms 940, are filed annually. Akins did not file any Forms 940 for tax years 2019 through 2022. The amount of tax loss resulting from this is small, but demonstrates a continuous pattern of behavior of not filing or paying taxes associated with Avia Solutions.

B.  The defendant's attempt to obtain additional PPP loans through a second draw

The defendant's attempt to obtain additional loans for four of his entities that had no business operations in 2019 or 2020 is relevant to complete the story of what happened with PPP applications. It is a continuation of his fraud scheme and is naturally intertwined with the charged bank fraud offenses. It is relevant to give the jury a full picture of the defendant's actions and is additional evidence showing that he acted with intent to defraud the government.

C.  The defendant's prior tax assessments—both by the District Court and Trust Fund Recovery Penalty imposed by an IRS Revenue Officer

The U.S. District Court's judgment and the IRS's assessment of Trust Fund Recovery Penalties against Akins is direct evidence of willfulness and is also admissible pursuant to FRE 404(b).

Both the district court's judgment and the IRS's TFRP against the defendant are evidence of willfulness. The government must prove that the defendant "willfully" failed to truthfully account for and timely pay over trust fund taxes to the IRS and failed to timely file an individual income tax return for tax year 2020. *See* 26 U.S.C. §§ 7202 and 7203. Any evidence introduced to prove the element of willfulness is intrinsic to the crime. *See United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989) (holding that "trial courts should follow a liberal policy in admitting evidence directed towards establishing the defendant's state of mind"). Evidence of the

11

defendant's sustained disregard not only by the IRS's assessment but also by the U.S. District Court's judgment shows that the defendant knew of his legal obligations to pay taxes, but nonetheless chose to ignore those obligations. It also shows that the charged conduct was not an isolated incident, but part of a multi-year scheme from at least 2009 that the defendant undertook to avoid his federal tax obligations. This background is therefore crucial to show the true scope of the defendant's tax misconduct.

But the defendant's disregard is not only for the IRS. The defendant—who had already been sentenced to sixty months imprisonment from a 2006 conviction in the U.S. District Court for the District of Maryland—further ignored the Court's 2016 civil judgment against him and has continued to accrue penalties in his federal tax assessments, which now amount to $1.8 million. Notably, the original complaint that led to the Court's 2016 judgment against the defendant also contains a TFRP assessed against his wife, longtime business partner, and current third-party custodian in this case—Natalie Amani.[3] The Court's 2016 judgment is strong willfulness evidence against defendant.

In the alternative, such evidence is admissible under Rule 404(b) to show the defendant's intent, knowledge, and the absence of mistake or accident. See Fed. R. Evid. 404(b). This evidence would not only be relevant to proving willfulness, but it would also be highly probative. See United States v. Daraio, 445 F.3d 253, 264-65 (3d Cir. 2006) (holding that evidence of a defendant's prior tax misconduct is admissible in tax evasion prosecutions to prove willfulness). This evidence would be reliable because it would be substantiated by IRS records and could be believed by a rational and properly instructed jury. Finally, this evidence would not

---

[3] Ms. Amani was sued for tax liabilities by the IRS, to include TFRPs assessed against her, in the same complaint against the defendant. Ms. Amani and the defendant not only married but also have several businesses together.

be outweighed, much less substantially outweighed, by unfair prejudice because it would not excite the jury to irrational behavior and subordinate their reason to emotion in the fact-finding process. See Daraio, 445 F.3d at 264-65 ("Inasmuch as it was essential for the government to make a showing of intent or willfulness to meet its burden of proof in this case, the district court properly admitted evidence of [the defendant's] prior tax non-compliance under Rule 404(b). Evidence that she committed similar offenses and had a history of non-compliance with the IRS was admissible and relevant to prove willfulness."); United States v. Scali, 820 F. App'x 23, 27-28 (2d Cir. 2020) ("tax filings from uncharged years were admissible as directly relevant to [the defendant's] intent to evade taxes in the charged years").

Indeed, numerous other courts have also admitted evidence of a defendant's prior tax misconduct under Rule 404(b) in subsequent tax prosecutions. See, e.g., United States v. Lach, No. 94-50109, 1995 WL 124323, at * 1-2 (9th Cir. Mar. 23, 1995) (evidence of prior tax audit regarding overreporting of expenses admissible in prosecution for underreporting gross receipts because both resulted in defendant underreporting corporate income); United States v. Johnson, 893 F.2d 451, 453 (1st Cir. 1990) (defendant's submission of a false IRS Form W-4 and his failure to file a tax return were admissible in a tax evasion prosecution related to an earlier tax year to prove willfulness).

As a result, the government should be permitted to introduce evidence of Akins' prior civil tax assessments—both made by the Court in a judgment and TFRP assessed by the IRS. Both the judgment and the assessment are reliable as authenticated public records and will be introduced through the testimony of the IRS Revenue Agent Bridget Mason, the government's summary witness.

D.  The Defendant's Use of the Business Account for Paying Personal Expenditures

Evidence of Akins' use of the business bank accounts is direct evidence of willfulness and motive. *See, e.g., United States v. Blanchard*, 618 F.3d 562, 572 (6th Cir. 2010) ("[i]f a defendant has made discretionary purchases in lieu of meeting his tax obligations, that is probative of his guilt"). During the time that Akins was required to pay over trust fund taxes to the IRS, he was instead using Avia Solutions funds to pay other expenses, including his own personal expenses. One potential argument by the defendant is that he did not act willfully in not paying the employment taxes owed because the business did not have the money to pay them. Evidence of his payment of personal expenses with business funds is relevant to rebut this argument.

## EVIDENCE ADMISSIBLE VIA CROSS-EXAMINATION/ REBUTTAL

A.  The Defendant's 2006 Convictions for Social Security and Bank Fraud

The government does not seek to introduce defendant's 2006 convictions and the underlying conduct in its case-in-chief. But, should the defendant posit as a defense at trial that his bank fraud charges were done with mistake, accident, good faith, or a similar argument, the government—in its cross-examination of defense's witnesses or in a rebuttal case—would present the defendant's fraud convictions for impeachment purposes.[4]

This evidence is "necessary, reliable, and properly balanced under Rule 403." *Queen*, 132 F.3d at 998. It is necessary because the government will only present this evidence should the defendant testify. Moreover, "the law shield[s] a defendant against *unfair* prejudice, not against *all* prejudice." *United States v. Smith*, 292 F.3d 90, 99 (1st Cir. 2002); *United States v.*

---

[4] This motion also serves as notice under Federal Rule of Evidence 609(b) to the defendant of the government's intent to introduce his convictions that are more than ten years old.

14

*Grimmond*, 137 F.3d 823, 833 (4th Cir, 1998) ("Evidence that is highly probative will invariably be prejudicial to the defense.") As such, the probative value of this evidence outweighs any danger of unfair prejudice.

    B.  <u>Use of Individuals A and B to Obtain Contracts with the Federal Government</u>

Similarly, the evidence relating to Akins' use of two veterans to obtain federal contracts may be relevant to the instant case if the defendant presents evidence or argument to the contrary: (1) Akins' familiarity and control of the federal contracting process, (2) his control over the finances of both companies, (3) his control over the payroll for Luomo. The government must prove the Akins was the person responsible for paying the employment taxes for Avia Solutions. His control over the finances of the two veteran businesses shows a pattern of control, knowledge of the requirements relating to payroll taxes, and lack of mistake.

## CONCLUSION

As explained above, the evidence the government seeks to introduce is either intrinsic to the charged crimes, admissible evidence of knowledge, intent, pattern, and absence of mistake, or permissible grounds for cross-examination and rebuttal. As a result, the government should be permitted to introduce this evidence at trial.

                                       Respectfully Submitted,

                                        /s/
                                     Shawn T. Noud
                                     Joseph D. G. Castro
                                     Trial Attorneys
                                     U.S. Department of Justice, Tax Division
                                     150 M Street NE
                                     Washington, DC 20002
                                     202-353-9215 (STN)
                                     Shawn.T.Noud@usdoj.gov
                                     Joseph.Castro3@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2025, I caused a true and correct copy of the foregoing motion to be served on the following counsel via ECF:

Robert C. Bonsib, Esq.
MarcusBonsib LLC
6411 Ivy Lane, Suite 116
Greenbelt, MD 20770
301-441-3000
robertbonsib@marcusbonsib.com
*Counsel for Defendant Vince Akins*

 

_____
Shawn T. Noud
Trial Attorney
U.S. Department of Justice, Tax Division